## J. L. DAILEY V. THE STATE.

### No. 10188.   Delivered February 16, 1927.

**1.—Robbery With Firearms—Bill of Exception—Qualification by Court—Rule Stated.**

Art. 667 of our C. C. P. provides that bills of exceptions in criminal cases shall be prepared, presented to the trial court, and filed under the rules prescribed in civil suits. Article 2327 Revised Civil Statutes of 1925 provides that if the judge finds any bill of exception tendered to him to be incorrect, he shall suggest to the party or his counsel such corrections as he deems necessary and *if they are agreed to,* he shall make such corrections, sign the bill and file it with the clerk.

**2.—Same—Continued.**

Subdivision 8 of said article is to the effect that if the party *does not agree* to the suggested correction, the judge shall return the bill to him, marked "refused," and shall prepare, sign and file with the clerk, a bill of exceptions such as in his opinion presents the ruling of the court, as it occurred.

**3.—Same—Continued.**

Subdivision 9 of said article declares that if the party be dissatisfied with the bill filed by the court, he may prepare and file a bystander's bill, under the rules required by statute, either party being entitled to controvert or maintain by affidavit the matters there made issuable.

**4.—Same—Continued.**

Where a bill of exception is qualified by the court and approved as

qualified, and such qualification is excepted to, under the statute and uniform holdings of this court such bill will be considered as approved, without the qualification. Following Thomas v. State, 83 Tex. Crim. Rep. 325.

**5.—Same—Evidence—Of Other Offenses—Improperly Received.**

Where on a trial for robbery with firearms the state asked several witnesses questions as to other widely separated matters from those involved in the case being tried, though objections to such questions and answers were sustained by the court, injected into the case other offenses of the same character as that for which appellant was being tried, this should not have been permitted.

**6.—Same—Continued.**

Matters that are fraught with as much danger to the rights of men on trial, as in this case, for their lives, cannot go unnoticed by this court. The state has no right to ask questions manifestly hurtful, and obtain answers, the only possible effect of which could be to prejudice the jury against the person on trial. Believing the matter presented to be prejudicial error, the judgment is reversed, and the cause is remanded.

Appeal from Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippen, Judge.

Appeal from a conviction for robbery with firearms, penalty assessed at death.

The opinion states the case.

*Chaney & Dailey*, and *Baskett & De Lee* of Dallas, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Conviction in Criminal District Court No. 2 of Dallas County of robbery with firearms, punishment death.

In the instant case bills of exception Nos. 1, 2, 3 and 6 appear qualified by the learned trial judge. A separate bill of exceptions is reserved to the qualifications appended to bills Nos. 1, 2 and 3, while on bill No. 6 merely appears a notation made by the trial judge that the qualification is excepted to. Either is sufficient. It is not made necessary by statute that the accused give any reasons for objecting to the court's action in qualifying his bill of exceptions, and we see no reason why the mere notation of such fact upon a bill would not be as amply sufficient as a separate bill of exceptions. We do not understand why the directions of the statute in regard to such bills of exception, are not followed. Art. 667 of our C. C. P. specifies that to

any decision, order, etc., of the trial court, the defendant may tender his bill of exceptions, which shall be signed by the judge under the rules prescribed in civil suits. Art. 2237 Revised Civil Statutes 1925, provides that if the judge finds any bill of exceptions tendered to him to be incorrect, he shall suggest to the party or his counsel such corrections as he deems necessary, and *if they are agreed to,* he shall make such corrections, sign the bill and file it with the clerk. Subdivision 8 of said article is to the effect that if the party *does not agree* to the suggested corrections, the judge shall return the bill to him marked refused, and shall prepare, sign and file with the clerk a bill of exceptions such as in his opinion presents the ruling of the court as it occurred. Subdivision 9 of said article declares that if the party be dissatisfied with the bill filed by the court, he may prepare and file a bystanders bill under the rule required by statute, either party being then entitled to controvert or maintain by affidavit the matters thus made issuable.

The bills of exception referred to in the instant case being approved with qualifications which were excepted to, we have no option under the statute and the uniform holdings of this court but to consider the bills as approved without the qualifications. Thomas v. State, 83 Tex. Crim. Rep. 325, 204 S. W. 999.

The state alleged and proved that appellant with a pistol robbed one Penniman, he at the time being accompanied by a young lady. At the beginning of this trial appellant entered a plea of guilty, but when he introduced evidence attempting to show that he was insane at the time of the alleged offense, the court properly declined to let the case proceed further upon a plea of guilty and entered a plea of not guilty for appellant. It does not appear that any testimony whatever was introduced by the appellant in any wise controverting the fact of his guilt of robbery, if sane. In this condition of the record, and after the close of the testimony introduced on behalf of appellant, the state introduced certain witnesses whose testimony is the subject of bills of exception Nos. 1, 2 and 3. These bills recite that the accused was positively identified by the alleged injured party and his companion, as the perpetrator of the robbery. The allegation in the indictment and the proof by the state show this offense was committed on August 16, 1925. Bill of exceptions No. 1 shows that the state introduced Mr. Ritchie as a witness, the proprietor of a drug store in Dallas, who testified that he saw appellant at his drug store on the night of August 6th in the neighborhood of 11 o'clock, and that he was there about ten minutes. Witness watched him closely and noticed that he

seemed excited and nervous.    Witness was shown a certain
nickel plated pistol identified as the one used by appellant in the
commission of the offense herein, and was asked if he saw that
gun that night.   Objection was made to this and overruled, and
witness answered that he could not identify the pistol.   He was
asked if he saw appellant with a gun in his hands on that occa-
sion and answered "yes." . Appellant objected and the court
sustained the objection and told the jury not to consider the
answer.   Bill No. 2 shows that the state placed on the stand
R. Sellers who said he was in the drug business in Dallas, and
that about fifteen minutes before 11 o'clock on the night of
July 12th he saw appellant in his place of business. Asked where
he saw him, he answered "Behind my cash register."   Objection
being made, the court sustained the objection and instructed the
jury not to consider the answer.   The state then asked witness
if there was any occasion for him watching appellant closely
at that time, to which he answered "yes."   Objection to this
was sustained.   Witness was then asked if he saw in appellant's
possession the nickel plated pistol above referred to, and said
that he did not.   Thereupon witness was asked if appellant had
a blue steel gun and answered "yes."   Objection to this was sus-
tained.   Asked if appellant was excited or cool and calm on that
occasion, witness answered over objection that appellant was
very cool and deliberate in what he did.   Bill No. 3 shows that
Mrs. Sellers, the wife of witness Sellers, was placed on the wit-
ness stand and swore that she saw appellant on the night of
July 12th when he came into her husband's drug store; that he
was very calm and cool while he proceeded with what he was
doing.   She said she observed him closely.   This was objected to
and the objection overruled.   Bill No. 6 shows that while the
state's attorney was arguing the case to the jury he called their
attention to the fact that the state brought a man by the name
of Sellers who testified he had seen appellant, saw him in his
store, and that he had occasion to look at him closely, and did
look closely at him.   Whereupon appellant objected, and the
court directed the state's attorney to keep in the record.   There-
upon said state's attorney further stated to the jury that he
was not going to get out of the record, that what he had stated
was what the witness said, and that the court permitted said
witness to testify to same.   He further proceeded:   "Then we
brought his good wife in here and she says 'I saw him.'   Why
didn't you ask her what he was doing?   Why didn't you ask her
what he did?"

It appears to us very plainly that the questions asked and
referred to in bills of exception Nos. 1, 2 and 3 were improper.

They referred to occasions widely separated from that involved in the instant case. They put into the minds of the jury, both by the questions asked and the answers made, facts which were very detrimental to the appellant. It seems to us they could not keep from remembering the fact as they considered the question of the guilt of this appellant and the penalty to be given him, that the state had shown that on two other occasions appellant was in drug stores at a late hour of the night with a pistol on each occasion. The court sustained the objection to most of the testimony referred to, but the whole matter was refreshed and brought back to the minds of the jury by the argument of the district attorney who said to the jury, evidently referring to appellant's counsel, "Why didn't you ask the witness to tell what he was doing? Why didn't you ask her what he did?" Matters that are fraught with as much danger of injury to the rights of men on trial, as in this case, for their lives can not go unnoticed by this court. The state, through her representatives has no right to ask questions manifestly hurtful and obtain answers the only possible effect of which could be to prejudice the jury against the person on trial. The transactions inquired about were different transactions. The matter was gone into on rebuttal, when as stated by the bills of exception, the accused had been identified positively by the prosecuting witnesses, and had introduced no evidence combating the proposition of guilt except as he might be able to establish his theory of insanity.

Believing the matter presented to be of prejudicial error, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*